## VALLI, et ux v. O'BRIEN.

No. 71-135.

Circuit Court, Broward County.

November 1, 1971.

John J. Intravia, Fort Lauderdale, for plaintiffs.

Parkhurst & LaHurd, Fort Lauderdale, for defendant.

LAMAR WARREN, Circuit Judge.

*Final judgment:* In this action for specific performance of a contract for the sale of real estate it was alleged that after a contract to convey real property, dated October 29, 1970, was entered

into, the defendant's husband died, that the plaintiffs had tendered the purchase price to the defendant widow and requested a conveyance but that she refused to accept the tender or make the conveyance; and plaintiffs offered to pay the purchase price.

The answer denied certain allegations, including the tender alleged, and for a first defense the defendant pleaded equity in that she was "an unemployed widow with only a small income from her deceased husband's pension fund and cannot financially afford to move from the house . . . inasmuch as her monthly payments on her mortgage proximate only $50."

In paragraph 4 of their complaint plaintiffs alleged that they "have tendered the purchase price to defendant and requested a conveyance of the real property described in the contract, but defendant refused to accept the tender or to make the conveyance."

Plaintiffs' exhibit four, which is a letter from plaintiffs' attorney to the defendant, contains this statement — "Meanwhile, Mr. and Mrs. Valli have provided all necessary funds for closing; and have arranged for a mortgage in the amount of $22,500 to be placed on the subject residence . . ." At trial however it was not shown that plaintiffs had arranged for a mortgage. Their exhibit three, which was a letter from an officer of the McCaughan Mortgage Company to Delegal Realty, who were handling the sale, stated, "We are pleased to inform you that Mr. Vincent J. Valli has been approved for his mortgage loan as filed," and this individual at trial testified that an application for a mortgage had been made by the plaintiffs to his company, that his company "brokers out" loans and that in this particular case the application was forwarded to Coral Gables Federal Savings and Loan, which would decide whether or not it was going to lend the money and would then forward a mortgage commitment which would contain the terms. He did not however have his office file, showing the action of Coral Gables Federal on the application, although his office was looking for the file. The letter above sent by him to the realty company, obviously did not contain any property description, amount, or terms, nor was it endorsed by the lender company.

Mrs. O'Brien on the other hand testified that no one had offered her any money.

In Glave v. Brandlein, Fla., 196 So.2d 780, which dealt with an action in specific performance where the defendants refused to convey, the court said —

> Our answer is simple and constitutes a mere re-statement of the already mentioned general rule. As a condition precedent to specific performance the seeking purchaser must either pay the contract sum; tender it;

establish that he is ready, willing and able to do so; or establish that he has been excused from so doing. It would be an anomaly indeed, under equity principles, for a vendee to ask a court to judicially require a vendor to remedy his defaults and perform his covenants by conveying title to vendee when there is no showing on the part of such vendee that he has paid or tendered the contract price as covenanted or that he is willing and has the ability to do so.

By way of hindsight survey, appellant should have done equity by either tendering the purchase price balance or properly showing his willingness and present ability to do so. This would serve to place the vendor in default and entitle the vendee to specific performance.

The above case is cited in Wilson v. Odom, Fla., 215 So.2d 37.

It was stated in 330 Michigan Avenue, Inc. v. Cambridge Hotel, Inc., 183 So.2d 725, where it was contended that the appellees did not show that they were ready, willing and able to purchase, that,

In equity the requirement of a tender of purchase money does not mean one valid at law, but rather a "present readiness, willingness, and ability in good faith to perform the acts required of one by the agreement, provided the other party will concurrently do the things which he is required by the contract to do, and notice by the former to the latter of such readiness, willingness, and ability."

Also, see Kreiss Potassium Phosphate Co. v. Knight, 124 So. 751.

The granting of a judgment in a specific performance action requires that the proof be clear, competent and satisfactory, this test imposing a greater degree of proof than that required under the preponderance of evidence rule. Humphrys v. Jarrell, Fla., 104 So.2d 404.

The court concludes that plaintiffs did not prove their allegation that they tendered the purchase price to defendant.

With respect to the defendant's equitable defense, it appeared from the evidence that subsequent to signing the contract, the plaintiff husband returned to Virginia and entered into certain agreements there to sell his home; that in a telephone call from Mrs. O'Brien she informed him that her husband had shot himself, and that she did not know what she was going to do and asked that plaintiffs back out of the contract, to which he responded he did not believe he could make a decision like that immediately and would contact the realty company and find out what his responsibilities were and talk to her later. In the light of his conversation he believed he had to continue with the purchase. He sold his house in Virginia shortly after her call.

Palmer Delegal, of the realty firm, testified he received the communication from McCaughan Mortgage Company, which he identified. Mrs. O'Brien's attorney told him she wanted to withdraw from the agreement, and the witness told the plaintiff husband he would refund his deposit money in full, contingent upon a release. This was approximately a week after Mr. O'Brien's death.

A witness for the defendant, who was a real estate salesman, testified that he was familiar with the O'Brien residence and that the same company was continuing to build the same models in the same area; that the sales price for the new models was $20,590; that she was on a canal and one would have to pay $1,000 for a canal lot, or $21,590; that it was standard landscaping on her lot.

Another witness, who was employed by the construction firm that constructed Mrs. O'Brien's house, testified that they constructed the same model and it was available.

Mrs. O'Brien testified that after her husband's death her income was decreased; that she gets a widow's pension; and that she was sixty years old. She has a mortgage on her home, the payments being $54 monthly, including interest, insurance and taxes. Her expenses exceed her monthly income. Her home is no different from the model home, except perhaps in shrubbery. She is employed as a librarian three days a week, at $28 a week. She asked Mr. Delegal if she could withdraw about two days after she buried her husband. And she identified plaintiffs' attorney's letter to her (plaintiffs' exhibit four), and she thought she gave it to her attorney.

The court's research has revealed that general law applicable to this defense is found in 49 Am. Jur., *Specific Performance,* §63, and in 81 C.J.S., *Specific Performance* §18b., the summary for the latter being, "Subsequent events or changes in conditions which the parties did not contemplate when the contract was made may furnish sufficient reason for refusing specific performance; but events which should have been contemplated as possible contingencies will not preclude specific performance." An extensive research of these two citations, and also of Florida decisions, has not convinced the court however that the facts of this litigation necessarily come within the law of changed conditions.

The plaintiffs not having proved their allegation of tender, the action for specific performance is dismissed and the defendant is ordered to return to the plaintiffs their deposit in the amount of $3,100 made on her behalf.